## No. 4779.

### (Court of Appeal, Parish of Orleans.)

### LOUIS R. ALBA vs. HENRY ZELLER.

H. B. McMurray for plaintiff and appellant.

John Bassich, Jr., for defendant and appellee.

## Statement of the Case.

GODCHAUX, J.—On June 26, 1906, an agreement under private signature was executed which recites that Geo. W. Henry "agrees to sell" to Louis R. Alba two adjoining lots of ground in this city, numbered respectively Lots 13 and 14, for the price $11,000 of which price $1,000 is acknowledged by Henry to have been paid, and it is specified that the balance shall be paid in monthly installments, and that, upon the payment of said balance, or, at the option of Alba upon the payment by him of one-third of the entire purchase price, Henry shall execute a formal authentic act of conveyance of the property to Alba. The agreement further provided that Alba could make, at his own expense, any improvement or additions he desired to the premises; that he should pay all the taxes and premiums of insurance upon the property; own all Henry's interest in the lease existing thereon, as well as the rents accrued and to accrue by virtue of said leases; and, in fact, should have and exercise at once all "rights of ownership in and to said property," subject, however, to the penalty that should Alba violate the agreement in any particular, then the same was to become null and void and all moneys paid, and all repairs and additions meanwhile made by him to the property, as well as all his rights under the agreement shall be forfeited to Henry, against whom Alba should have no claim for reimbursement either for the cost of these repairs and additions or for any taxes and insurance premiums paid.

In November, 1907, Alba filed the present suit against the defendant, Zeller, the owner of the lot adjoining Lot 13, Zeller's lot being designated Number 12. The petition, after reciting Alba's acquisition of "all rights of ownership" in his long and undisturbed possession of Lots 13 and 14, under the agreement of June 26, 1906, alleges that Lot 13 is partly occupied by a building; that

adjoining this building on the side of it towards Lot 12 of Zeller, is an alley separated by a board fence dividing Lots 12 and 13; that in and along the length of said alley and on the side thereof towards this fence, there existed a "drainage guttering" used for draining the alley and yard of plaintiff's Lot 13; that said fence had been erroneously located (not being on the real dividing line) and for more than ten years had been three inches upon Lot 12, owned by defendant.

The allegation is then made that on September 18, 1907, the defendant, Zeller, without knowledge or the consent of nor the notice to Alba, required by law and by the ordinances of the city, undertook to extensively repair said fence (which then only required slight restoration, which plaintiff would have consented to if properly notified), and to move and erect same upon the real dividing or common line of Lots 12 and 13, and, in moving, repairing and re-erecting said fence upon said line, did change the position of the fence posts which were originally on defendant's side, and did illegally place them on plaintiff's side and property, driving said posts through and consequently ruining the aforesaid "drain guttering," and causing the premises to flood, and did change the style, height and size of a gate frame and gate on petitioner's property.

Alleging that these acts constituted a trespass and interfered with his free enjoyment of his alley and property and have caused him actual damage to the extent of five hundred ($500.00) dollars, and that the obstruction of said alley, if persisted in, will result in further injury and damage, he prayed for judgment for the amount of actual damages stated, and further prayed for and secured, upon the face of the sworn petition and without hearing, an injunction prohibiting Zeller from obstructing the alley and interfering with Alba's free

use and enjoyment thereof, and commanding the Sheriff, in the event this order was not complied with, to remove the posts interfering with the drain obstructing the alley and to properly place them where they belong.

Subsequently, upon proper application, the injunction was bonded, and the defendant filed his answer, several exceptions, only one of which is insisted upon here and need be noticed and is to the effect that plaintiff, not being the owner of the property upon which the purported trespass was committed, has no standing in court to complain of and seek redress for defendant's act. This exception was heard prior, but referred to the merits, and it was then conclusively shown that plaintiff had been in actual possession of Lots 13 and 14 for more than one year prior to the institution of the suit.

The trial resulted in a judgment dissolving the injunction and dismissing plaintiff's demand at his cost.

### Opinion.

The exception of want of sufficient interest in plaintiff to prosecute the suit and stand in judgment was not well taken. No matter what name may be given to the agreement of June 26, 1906, it conveyed to plaintiff the right to the exclusive possession of Lot 13, and, having enjoyed such possession for more than one year, he had the undoubted legal right to complain of, prevent and seek redress for injuries suffered through the commission of any act (even of the legal owner) exercised without legal process or formality, which interfered with this possession, or which, as a consequence of such interference, caused him injury.

> Code of Practice 298, Secs. 3 and 5.
> Nocol vs. Illinois Central R. R., 44 La. An. 816.

On the merits the petition, as well as the testimony

elicited upon the trial, discloses that plaintiff's complaint is not that the fence was originally upon the true boundary and was subsequently moved by defendant to an incorrect line of division. On the contrary, he admits in his pleading, in his testimony, and in brief and argument, that the fence originally stood upon the incorrect, and was subsequently placed by defendant upon the correct, line of division, but he complains:

**First.** That this change was made without defendant having given him the prior notice required in such cases by the city ordinance; and,

**Secondly.** That the making of this change and moving of this fence constituted, in the sense of said ordinance, an act of repairing an existing party fence, and not an original inclosing by an owner of a lot with a "good and suitable substantial party fence; and that, consequently, the upright posts supporting the fence should have been left on the same side as they occupied before—that is, on Zeller's side—and that Zeller acted illegally and without authority and committed a trespass in placing these posts upon plaintiffs' side to any extent whatever.

Neither of these complaints is well-founded or tenable.

With reference to the first complaint—that is, the failure of the defendant to give Alba notice prior to the removing the fence to the real line of subdivision—it is true that Ordinance No. 199, A. C., of the City of New Orleans, provides that where an owner desires to inclose his lot by a fence or to repair a party-fence already existing, he shall give the adjoining proprietor a ten days' prior notice, describing the premises to be inclosed and the character of fence to be erected or repairs to be made, to join him in such building or repairs, and that, if the latter neglect to join as aforesaid within said period of ten days, then the owner may himself build a "good, substantial and suitable fence," or as the case

may be, repair the old one, and recover one-half of the cost thereof from such adjoining proprietor. The sole object of this notice would seem to be to inform the adjacent proprietor of the location and character of the fence to be constructed, and, in the event of failure to give this notice, the sole penalty to be visited upon the owner, in addition to his loss of the right to recover one-half the cost of the fence, would be his obligation to correct any failure on his part to locate the fence upon the actual boundary and to reimbuse his neighbor any damage the latter might suffer through said error.

In the present case the removal of the fence to the proper boundary is admitted and no question is raised as to liability for one-half the cost of the fence, and, consequently, the plaintiff would have nothing to complain of on the score of this lack of formal notice; even were he to ignore his letter of September 18, 1907, to defendant, wherein, in our opinion, he specifically waives the giving of the notice provided for by the ordinance.

With reference to plaintiff's second complaint—that is, that defendant's act constituted simply the repair of an old existing party fence, and consequently the latter was without right to locate the supporting posts upon plaintiff's side of the fence, it appears that Ordinance No. 4433 C. S., which described in detail what was meant by the phrase "a good, substantial and suitable fence," in the former ordinance, and further provided that the party building the fence should "have the right to place the posts upon his neighbor's side."

In the light of the provisions of these ordinances and the facts disclosed by the record, the defendant had the undoubted right, as the builder of the fence, to place the posts on his neighbor's side; first, because in as much as the fence formerly was entirely upon his own property, and, therefore, did not constitute a party fence, his act in

removing it to the dividing line constituted an inclosing of his property for the first time in the sense of the ordinance, irrespective of whether the materials employed were new or old or had been therefore employed for fence purposes; and, secondly, because, in fact, as shown by the record, the old fence did require rebuilding and the fence actually installed by him upon the true boundary is in fact substantially a new fence of new material and not an old one repaired in the sense of the ordinance.

The damages, if any, suffered by the plaintiff as to his "drain guttering," and gateway, were insignificant, and having been entailed through the defendant's exercise of a legal right in a legal manner, a commendable effort on his part to minimize any injury and inconvenience to his neighbor, constitute **damnum absque injuria**, and plaintiff has no right of recovery.

The judgment of the lower Court, dissolving the injunction and dismissing plaintiff's suit, was correct, and it is hereby affirmed.

Judgment affirmed.

Judge St. Paul recused.

December 13, 1909.

Rehearing refused, January 10, 1910.